IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IRON THUNDERHORSE, | § | |
| TDCJ # 00624391 | § | |
| | § | |
| V. | § | W-19-CV-246-ADA |
| | § | |
| CYNTHIA D. TILLEY, ARNULFO | § | |
| BENNETT, SONJA M. BOYD. | § | |

## ORDER

Before the Court are Plaintiff Iron Thunderhorse's complaint filed pursuant to 42 U.S.C. § 1983 (ECF Nos. 1-2), and Defendants Cynthia D. Tilley, Arnulfo Bennett, and Sonja M. Boyd's Motion for Summary Judgment (ECF No. 30). Plaintiff is proceeding pro se and *in forma pauperis*. Upon careful consideration, the Court grants Defendants' motion and dismisses Plaintiff's complaint with prejudice.

## STATEMENT OF THE CASE

Plaintiff is currently incarcerated in the Stiles Unit at the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID).[1] Plaintiff's complaint, however, arises from events that occurred while he was incarcerated in TDCJ-CID's Boyd Unit. Plaintiff alleges that Defendants retaliated against him after he filed grievances regarding his conditions of confinement at the Boyd Unit, specifically regarding the accommodations made for his medical issues and his use of a wheelchair. He also claims

---

[1] On August 22, 2019, Plaintiff filed a change-of-address notice stating he was at the Beto 1 Unit Infirmary. (ECF No. 38.) The TDCJ-CID Offender Search tool, however, lists Plaintiff as incarcerated at the Stiles Unit and in Plaintiff's last communication with the Court he put Stiles Unit as his return address. (ECF No. 39.) The Court has yet to receive a formal change-of-address notice from Plaintiff.

1

that "defendants"[2] violated his Eighth Amendment rights by subjecting him to conditions reserved for a "PERSONNA NON GRATA", and that the Boyd Unit defendants created false disciplinary charges against him which violated his rights to equal protection of the law. (ECF No. 2-1 at 20.) He seeks declaratory and injunctive relief, and $2.5 million in punitive damages. (ECF Nos. 1-2.)

Defendants moved to dismiss the complaint, arguing that the Eleventh Amendment barred Plaintiff's complaint for damages against Defendants in their official capacities; that Plaintiff's claims against Defendant Tilley were premised on a theory of respondeat superior and thus not cognizable under § 1983; and that he had failed to state a retaliation claim against Defendants Bennett and Boyd. (ECF No. 30.) The Court converted Defendants' motion to one for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 31.) In their supplemental briefing, Defendants incorporate the arguments from their original motion and attach 185 pages of Plaintiff's grievance activity between October 2016 and November 2017, two disciplinary reports, and select pages from the TDCJ-CID's Disciplinary Rules and Procedures for Offenders (ECF No. 35). Plaintiff's response to the supplemental briefing was due by August 23, 2019. Plaintiff did not file any response. On August 22, 2019, Plaintiff notified the Court that he had been hospitalized. (ECF No. 38). On January 24, 2020, without any prior communication or acknowledgment of the missed deadline, Plaintiff filed a response to Defendants' motion

---

[2] Plaintiff's complaint, originally filed in the United States District Court for the Eastern District of Texas, named twelve defendants from three different TDCJ-CID units. His complaint was severed and the claims against Defendants Tilley, Bennett, and Boyd were transferred to this Court. (ECF Nos. 1, 20, 27.)

2

for summary judgment. The response, however, was completely illegible. (ECF No. 39). The Court gave Plaintiff an extension until February 24, 2020, in order to file another response, but to date Plaintiff has failed to submit anything.

## DISCUSSION AND ANALYSIS

A.  <u>Eleventh Amendment Immunity</u>

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). A suit for damages against an official in his official capacity is not considered a suit against that person but is construed as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Gather v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Fifth Circuit has held that the Eleventh Amendment bars a prisoner's civil rights suits for money damages against TDCJ-CID officials in their official capacities. *Oliver v. Scott*, 276 F.3d 736, 742 & n.5 (5th Cir. 2002). Plaintiff's suit against Defendants in their official capacities for money damages is therefore barred by the Eleventh Amendment and must be dismissed.

B.  <u>Summary Judgment</u>

On a motion for summary judgment, a court will render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere

3

allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995).

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in their favor. *See James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990). "When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The summary judgment evidence shows the following.

On October 7, 2016, Plaintiff filed a Step 1 grievance complaining that he had arrived at the Boyd Unit the day before but had still not received a mattress and wanted one promptly. Defendant Tilley responded that Plaintiff had received a mattress as soon as staff were aware he needed one. (ECF No. 35-1 at 81-82.) On October 28, Plaintiff

filed a Step 1 grievance, complaining that an unnamed Sergeant had escorted him to a lay-in appointment, and had refused Plaintiff's request for someone to push his wheelchair, saying that Plaintiff needed a "special pass" to have someone push his wheelchair. In his complaint[3] Plaintiff states that Defendant Bennett would give direct orders to men pushing Plaintiff's wheelchair and threaten them with a disciplinary case, and then would threaten Plaintiff with disciplinary cases for obstructing the hallways when Plaintiff had no help getting around the Boyd Unit. Plaintiff states that Bennett left other inmates being pushed in their wheelchairs alone. (ECF No. 2-1 at 13.) Defendant Tilley responded to Plaintiff's grievance that there was "no job assignment DOT code for offenders to push other offenders in wheelchairs." (ECF No. 35-1 at 30-31.)

On November 14, 2016, Plaintiff filed a Step 1 grievance complaining that he was waking up to smoke every evening due to "routine burning" being done outside his windows. He requested to be relocated due to his medical restrictions which include not being exposed to environmental pollutants. Defendant Tilley responded that a "G4 wheelchair offender" had to be housed on Plaintiff's wing. (*Id*. at 83-84.) Plaintiff filed another Step 1 grievance on November 14, 2016, complaining about an incident in the chow hall: while Plaintiff usually goes directly to a handicapped table and a kitchen worker would bring him a tray, on this day a correctional officer told Plaintiff he was not special

---

[3] Plaintiff's complaint was verified pursuant to 28 U.S.C. § 1746, and thus constitutes competent summary judgment evidence. See *Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019) (verified pleadings are competent evidence at summary judgment); *see also Lodge Music Hall, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) (verified pleadings are competent summary judgment evidence when they are based on personal knowledge, set forth facts that would otherwise be admissible, and show affiant is competent to testify).

and that he had to go through the chow line, which created a disruption due to Plaintiff being in a wheelchair. Plaintiff claimed this violated the American with Disabilities Act. The grievance was returned to Plaintiff because it was in excess of one grievance every seven days. (*Id*. at 49-50.) Plaintiff filed a third Step 1 grievance on November 14, 2016, complaining that he was being forced to use his legs to propel his wheelchair to the chow hall, commissary, medical clinic, and law library, which was a violation of his medical restrictions. He alleged that he was experiencing harassment and retaliation for filing grievances about the violations of his special needs, and requested a move to a different wing of the Boyd Unit so he could be closer to all the relevant areas. This grievance was returned to Plaintiff because it was in excess of the one grievance every seven days, and it was redundant. (*Id.* at 51-52.)

On November 16, 2016, Plaintiff received a disciplinary for assaulting Defendant Boyd by running into her left leg with his wheelchair. The assault did not result in any injuries. (ECF No. 35-2 at 3.) In his complaint, Plaintiff states that he was just outside his cell, waiting to go to the chow hall for lunch, when Defendant Boyd came up on his blind side, and when he attempted to turn around, he collided with her. He states that she said "you did that on purpose" and then left the area and immediately had a conversation with Defendant Bennett. Plaintiff states that, in his opinion, the event was "staged." (ECF No. 2-1 at 13.) Defendant Bennett performed the investigation of the offense, noting that there were no witnesses and that Plaintiff made no statement. (ECF No. 35-2 at 5.)

Plaintiff states that while Defendant Bennett was investigating the incident, he put Plaintiff in an "empty storage area" and did not provide him with food or water or access

to a urinal for several hours. Plaintiff alleges his chest began to hurt and he eventually collapsed on the floor; he was taken to the infirmary where nurses gave Plaintiff oxygen, a nitroglycerin tablet, and performed electrocardiogram. Plaintiff was eventually returned to his cell but not given any food. (ECF No. 2-1 at 14.)

At the disciplinary hearing, Plaintiff was assigned a "counsel substitute" and stated that he did not intend to hit Defendant Boyd; rather, she walked into him. The hearing officer, Captain Stipe, refused Plaintiff's request to call Kimberly Cotton, the ADS[4] Coordinator, saying she was irrelevant since she had not witnessed the event. Plaintiff was found guilty of Code Violation 3.3 Assaulting an officer without a Weapon, and punished with loss of 30 days commissary privileges, 30 days of cell restrictions. (ECF No. 35-2 at 3.)

Plaintiff filed a Step 1 grievance about the disciplinary hearing, saying that Captain Stipe erred by not calling Kimberly Cotton, as she would have testified that ADS policy states an ADS patient cannot be disciplined for bumping into an officer with a blind stick or wheelchair. He further argued that no officer passed out witness statements and the video of the incident was not consulted. (ECF No. 35-1 at 3.) Defendant Tilley denied the grievance, stating that she had reviewed the case and video surveillance supported the charge applied, and that the punishment imposed was within guidelines. (*Id.* at 4.) Plaintiff filed a Step 2 grievance, arguing that his wheelchair was not a weapon, that Defendant Boyd had not been injured, and that he did not know she was behind him when he turned around. He also argued the conviction was in retribution for his

---

[4] Plaintiff does not explain what "ADS" means or refers to.

complaints about Boyd Unit not being in compliance with the ADA. This grievance was also denied, with the officer stating that the verdict was supported by the evidence and that all due process requirements were satisfied. (*Id.* at 5-6.)

On November 30, 2016, Plaintiff filed a Step 2 grievance appealing the denial of the October 28, 2016, grievance referencing an unnamed Sergeant. Plaintiff argued that the denial of his Step 1 grievance was wrong because Defendant Bennett had singled him out for retribution, saying that Defendant Bennett "orders only those inmates pushing me – and not others who push inmates in wheelchairs." (*Id.* at 32.) In his complaint, Plaintiff alleged that Bennett would threaten inmates pushing him with disciplinaries, and that he also threatened Plaintiff with disciplinaries for blocking the hallways. (ECF No. 2-1 at 13.) Plaintiff alleged this was retaliation for the grievances he had filed complaining about Boyd Unit's non-compliance with ADA requirements. An officer responded that Plaintiff's assignment to Boyd Unit met all his medical requirements. (ECF No. 35-1 at 33.)

Plaintiff states that he was also demoted from G4 to G5 custodial status, and eventually transferred to TDCJ-CID's Gib Lewis Unit. He alleges his demotion in custodial status and transfer were in retaliation for the grievances he filed. (ECF No. 2-1 at 14.)

"Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019). The elements of a retaliation claim are "(1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right;

8

(3) a retaliatory adverse act; and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). The plaintiff must establish that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory statements that retaliation occurred are not sufficient; rather, "the inmate must produce direct evidence of motivation or, . . . 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.*

Here, Plaintiff claims that after he filed grievances about the Boyd Unit's alleged non-compliance with the ADA, he was wrongly disciplined, which resulted in a custodial demotion and transfer to a different prison. The evidence shows that he filed approximately five grievances prior to November 16, 2016, but that none of these grievances specifically named either Defendant Bennett, Boyd or Tilley. The Step 2 grievance he filed wherein he specially named Bennett was submitted on November 30, 2016, two weeks after he ran into Boyd with his wheelchair. Further, the record shows that the video footage of the wheelchair incident was considered and that it supported the charge against Plaintiff. Plaintiff does not deny running into Boyd; rather he alleges that it was an accident, because she was on his blindside. Thus, the Court cannot conclude that but-for a retaliatory motive, Plaintiff would not have received a disciplinary for assaulting an officer, and outside of Plaintiff's allegations, there is no evidence that this incident was "staged" by Bennet and Boyd.

Accordingly, there is no evidence supporting a causal connection between Plaintiff's grievances and Defendant Boyd's decision to charge him with a disciplinary violation, or Defendant Bennett's investigation of the incident. Even assuming Defendant

Bennett did place Plaintiff in an empty storage room for a couple of hours without food or water while he investigated the wheelchair incident, there is no evidence showing this action was in retaliation for Plaintiff's grievance activity, especially considering Plaintiff did not name Bennett in a grievance until two weeks later. The Court therefore concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

C. <u>Supervisory Liablity</u>

In his complaint, Plaintiff names Defendant Tilley and states that, as the Warden for the Boyd Unit, she is "legally responsible for the health, safety and welfare of the plaintiff and is legally responsible for the overall operations of the Boyd Unit" and that, as the supervisor, she failed to adequately train and "otherwise supervise her subordinates." (ECF No. 2-1 at 4.) These are the only allegations Plaintiff makes against Defendant Tilley. The summary judgment record shows that she denied several of his grievances but was not otherwise involved in Plaintiff's discipline.

Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978). As a result, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). If a supervisor is not personally involved in the alleged constitutional deprivation, the supervisor may be held liable only if there is a sufficient causal connection between their wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so

deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Id.* at 304 (citation omitted).

Plaintiff alleges that Defendant Tilley was responsible for the alleged ADA violations that occurred at Boyd Unit, but there is no evidence in the record that supports her personal involvement. Further, Plaintiff has not pointed to a constitutionally deficient policy that Defendant Tilley implemented at Boyd Unit and there is no evidence in the record suggesting a failure to train, or that such a failure was linked to any violation of Plaintiff's constitutional rights. *See Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). As detailed in the previous section, there is no evidence supporting Plaintiff's claim that Defendants Boyd and Bennett retaliated against him for filing grievances.

At most, the record shows that Tilley denied several of Plaintiff's grievances, but the the denial of grievances does not, in itself, implicate a constitutional right. *Cf. Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (prisoners do not have constitutionally protected liberty interest in having grievances resolved to their satisfaction.) Accordingly, Defendant Tilley is also entitled to summary judgment.

D. 28 U.S.C. § 1915(e)

A plaintiff proceeding *in forma pauperis* may have his complaint dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B); *Black v. Warren*, 134 F.3d 732, 733 (5th Cir. 1998). When reviewing a pro se plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. *See Haines v. Kerner*,

404 U.S. 519, 520 (1972) (pro se complaints held to less stringent standards than formal pleadings drafted by lawyers); *Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (court affords pro se pleadings liberal construction). However, even for pro se plaintiffs, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice' to state a claim for relief." *Id.*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff must also plead sufficient facts to state a claim for relief that is plausible on its face. FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id.*; *Twombly*, 550 U.S. at 555 (factual allegations must be enough to raise a right to relief above the speculative level) (citation omitted).

In his complaint, Plaintiff claims that all defendants have violated his Eighth and Fourteenth Amendment rights, as well as the ADA. Beyond these conclusory statements, Plaintiff does not state in any detail how Defendants Tilley, Bennett, or Boyd violated his constitutional and federal rights, and thus he has failed to state a claim for which relief may be granted and his claims must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii) (court

shall dismiss case at any time if it determines that the action fails to state a claim on which relief may be granted); *see also Lightbourn v. Cnty. Of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997) (elements for stating a claim under Title II of ADA include being excluded from participation in or benefits of programs, services, or activities on basis of one's disability); Varnado *v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (allegations of unsuccessful medical treatment, mere negligence, neglect, or medical malpractice do not give rise to a § 1983 action); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (punishment with 30 day loss of commissary privileges and cell restrictions does not implicate constitutional due process); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (prisoners have not protectable liberty interest in custodial classification); *Wheeler v. Miller*, 168 F.3d 241, 242 (5th Cir. 1999) (equal protection claim requires proof that similarly situated individuals were treated differently).

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 30) is **GRANTED** and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**SIGNED** on March 5, 2020

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE